IN THE DISTRICT COURT OF THE UNITED STATES
FOR THE DISTRICT OF SOUTH CAROLINA
CHARLESTON DIVISION

| | |
|---|---|
| Kendall Green, #315971, ) | Civil Action No.:2:13-2253-MGL-WWD |
| ) | |
| Petitioner, ) | |
| ) | **REPORT AND RECOMMENDATION** |
| v. ) | **OF MAGISTRATE JUDGE** |
| ) | |
| Warden Robert Stevenson, *Broad* ) | |
| *River Correctional Institution*, ) | |
| ) | |
| Respondent. ) | |

The Petitioner, a state prisoner proceeding pro se, seeks habeas relief pursuant to 28 U.S.C. § 2254. This matter is before the Court on upon Respondent's Motion for Summary Judgment (Dkt. No. 14; see also Dkt. No. 15), and Petitioner's Motion to Amend (Dkt. No. 18).

Pursuant to the provisions of Title 28, United States Code, Section 636(b)(1)(B), and Local Rule 73.02(B)(2)(c), D.S.C., this magistrate judge is authorized to review the instant petition for relief and submit findings and recommendations to the District Court.

The Petitioner brought this habeas action on August 14, 2013. (See Dkt. No. 1.) On November 13, 2013, Respondent filed a Motion for Summary Judgment. (Dkt. No. 14; see also Dkt. No. 15.) By order filed November 13, 2013, pursuant to Roseboro v. Garrison, 528 F.2d 309 (4th Cir. 1975), the Petitioner was advised of the summary judgment procedure and the possible consequences if he failed to adequately respond to the motion. (Dkt. No. 16.) On or about November 19, 2013, Petitioner filed a Motion to Amend his habeas petition. (See Dkt. No. 18; see also Dkt. No. 19; Dkt. No. 21.) Petitioner filed his Response in Opposition to the Motion for Summary Judgment on or about January 21, 2014. (Dkt. No. 27.)

## PROCEDURAL HISTORY

The Petitioner is currently confined at Broad River Correctional Institution of the South Carolina Department of Corrections. In May of 2005, the Marlboro County Grand Jury indicted Petitioner on charges of murder, kidnapping, and larceny in excess of $5,000. (R. at 513-18.) Petitioner was represented at trial by Frank E. Cain, Jr., Esquire. (See R. at 1.) Petitioner proceeded to a jury trial before the Honorable Edward B. Cottingham on June 12-14 of 2006. (R. at 1-426.) The jury convicted Petitioner as charged, and Judge Cottingham sentenced Petitioner to life for murder, and to ten years, consecutive, on the charge of larceny in excess of $5,000. (R. at 422-23.)[1]

Petitioner appealed and was represented on appeal by Robert M. Dudek of the South Carolina Commission on Indigent Defense. (See Dkt. No. 15-5.) In his Final Brief of Appellant, Petitioner raised the following issue:

> Whether the court erred by refusing to remove the handcuffs and other restraints from appellant during his jury trial, since trying appellant with restraints on was fundamentally unfair and denied appellant his right to a fair trial?

(Dkt. No. 15-5 at 4 of 12.) On October 17, 2008, the South Carolina Court of Appeals issued an order affirming the convictions. (Dkt. No. 15-7.) The matter was remitted to the lower court on November 18, 2008. (Dkt. No. 15-8.)

Petitioner filed an application for post-conviction relief ("PCR") on August 4, 2009. (R. at 427-45.) Therein, Petitioner asserted he was being held in custody unlawfully on the following grounds (verbatim):

(a) Lack of subject matter jurisdiction

(b) Ineffective assistance of counsel, and

---

[1] Judge Cottingham stated, "I will not sentence [Petitioner] under the kidnapping inasmuch as the statute says the kidnapping sentence is vacated on one who is convicted of murder." (R. at 422.)

2

>    (c) Ineffective assistance of Appellant counsel & 5th & 14th Amendments Due Process Violations.

(R. at 429.)

On September 12, 2011, an evidentiary hearing was held before the Honorable William H. Seals, Jr. (See R. at 461-504.) Petitioner was present and represented by J. Marshall Biddle, Esquire. (See R. at 461.) In an order dated September 26, 2011, Judge Seals denied the application for post-conviction relief and dismissed the petition. (R. at 505-12.)

Petitioner, through his attorney David Alexander of the South Carolina Commission on Indigent Defense, filed a Johnson Petition for Writ of Certiorari on October 5, 2012. (See Dkt. No. 15-9.)[2] Through counsel, Petitioner raised the following issue:

> Whether Petitioner's Sixth Amendment rights were violated because trial counsel was ineffective in failing to request an instruction from the trial judge that the jury was not to draw an adverse inference or an inference of guilt from the fact that petitioner was shackled throughout his trial?

(Dkt. No. 15-9 at 4 of 11.) Mr. Alexander also filed a petition to be relieved as counsel. (Dkt. No. 15-9 at 10 of 11.) By letter dated October 8, 2012, Petitioner was advised of his right to file a *pro se* response to the Johnson petition. (See Dkt. No. 15-10.) Petitioner did not file a response.

In an order filed July 11, 2013, the Supreme Court of South Carolina denied the petition and granted counsel's request to withdraw. (Dkt. No. 15-11.) On July 22, 2013, Petitioner filed a Motion for Reconsideration; he supplemented that motion on July 31, 2013. (See Dkt. No. 15-12.) On August 22, 2013, the Supreme Court of South Carolina denied Petitioner's Motion for Reconsideration. (Dkt. No. 15-13.) The matter was remitted to the lower court on August 23, 2013. (Dkt. No. 15-14.)

---

[2] See Johnson v. State, 294 S.C. 310, 364 S.E.2d 201 (1988).

Petitioner then filed the instant habeas petition, wherein he raised the following grounds for review (verbatim):

> **GROUND ONE**: Ineffective assistance of trial counsel.
>
> **Supporting facts:** Appellant sixth amendment rights was violated because trial counsel was ineffective for failing to request a cautionary instruction from the trial judge that the jury was not to draw an adverse inference or an inference of guilt from the fact that appellant was in visible restraints throughout his trial.
>
> **GROUND TWO**: Ineffective assistance of trial counsel/impeachment issue.
>
> **Supporting facts:** Appellant sixth amendment rights were violated because trial counsel failed to impeach the state's key witness (appellant's co-defendant) by producing his prior inconsistent statement, which would have shown that he was on stand lying under oath.

(Dkt. No. 1.) As noted above, Petitioner seeks to supplement his habeas petition; Petitioner asserts the following ground for relief in his Motion to Amend:

> [T]he trial court did not pursue less restrictive alternatives before compelling [Petitioner] to wear restraints before the jury. Less restrictive alternatives [are] mandated pursuant to Holbrook v. Flynn and other relevant precedents.

(Dkt. No. 21 at 1 of 2.)

## **APPLICABLE LAW**

**Summary Judgment Standard**

Pursuant to Rule 56 of the Federal Rules of Civil Procedure, summary judgment "shall" be granted "if the movant shows that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). "Facts are 'material' when they might affect the outcome of the case, and a 'genuine issue' exists when the evidence would allow a reasonable jury to return a verdict for the nonmoving party." The News & Observer Publ'g Co. v. Raleigh-Durham Airport Auth., 597 F.3d 570, 576 (4th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986)). In ruling on a motion for summary judgment, "'the nonmoving party's evidence is

to be believed, and all justifiable inferences are to be drawn in that party's favor.'" Id. (quoting Hunt v. Cromartie, 526 U.S. 541, 552 (1999)); see also Perini Corp. v. Perini Constr., Inc., 915 F.2d 121, 123-24 (4th Cir. 1990).

**Habeas Standard of Review**

Since the Petitioner filed his petition after the effective date of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), review of his claims is governed by 28 U.S.C. § 2254(d), as amended. Lindh v. Murphy, 521 U.S. 320, 322-23 (1997); Breard v. Pruett, 134 F.3d 615, 618 (4th Cir.1998). Under the AEDPA, federal courts may not grant habeas corpus relief unless the underlying state adjudication:

> 1. resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> 2. resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented at the State court proceeding.

28 U.S.C. § 2254(d); Williams v. Taylor, 529 U.S. 362, 398 (2000). "[A] federal habeas court may not issue the writ simply because that court concludes in its independent judgment that the relevant state-court decision applied clearly established federal law erroneously or incorrectly. Rather, that application must also be unreasonable." Williams, 529 U.S. at 410. "A state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision." Harrington v. Richter, 131 S.Ct. 770, 786 (2011) (quoting Yarborough v. Alvarado, 541 U.S. 652, 664 (2004)).

## **DISCUSSION**

As noted above, Respondent seeks summary judgment in the instant case. (See Dkt. No. 14; see also Dkt. No. 15.) Respondent also opposes Petitioner's request to amend his petition. (See Dkt. No. 24.) For the reasons set forth herein, the undersigned recommends

denying Petitioner's Motion to Amend (Dkt. No. 18), and granting Respondent's Motion for Summary Judgment (Dkt. No. 14).

**A.     Ground One: Failure to Request Jury Instruction Regarding Restraints**

In Ground One of his petition, Petitioner asserts that his trial counsel was ineffective for "failing to request a cautionary instruction . . . that the jury was not to draw an adverse inference or an inference of guilt from the fact that [Petitioner] was in visible restraints throughout his trial." (Dkt. No. 1.)

The United States Supreme Court has said that a meritorious ineffective assistance of counsel claim must show two things: first, that counsel's performance was deficient and, second, that counsel's deficient performance prejudiced the defense. Strickland v. Washington, 466 U.S. 668, 687-96 (1984). A court's evaluation of counsel's performance under this standard must be "highly deferential," so as to not "second-guess" the performance.  Id. at 689.  "[A] court must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance; that is, the defendant must overcome the presumption that, under the circumstances, the challenged action might be considered sound trial strategy." Id. (internal quotation marks and citation omitted); see also Bowie v. Branker, 512 F.3d 112, 119 n.8 (4th Cir. 2008); Fields v. Att'y Gen. of Md., 956 F.2d 1290, 1297-99 (4th Cir. 1992); Roach v. Martin, 757 F.2d 1463, 1467 (4th Cir. 1985).  In order to establish the second prong of Strickland, "[t]he defendant must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Strickland, 466 U.S. at 694.  A "reasonable probability" has been defined as "a probability sufficient to undermine confidence in the outcome." Id. While Strickland itself is a deferential standard, when both § 2254(d) and Strickland apply, "review is doubly" deferential. Harrington v. Richter, 131 S.Ct. 770, 788 (2011). Indeed, when § 2254(d) applies, "[t]he question is whether there is

6

any reasonable argument that counsel satisfied Strickland's deferential standard." Harrington, 131 S.Ct. at 788.

The argument set forth in Ground One was raised in Petitioner's PCR proceedings, and in the order of dismissal, the PCR judge noted the following testimony:

> The Applicant stated that, as he was kept in shackles during the trial, trial counsel should have requested a cautionary charge to the jury in order to avoid prejudice. . . .
> Trial counsel stated he objected to the Applicant wearing handcuffs during the trial but did not recall discussing whether a jury instruction on the matter should be given. Trial counsel testified that such a charge would not have been helpful to the Applicant anyway.

(R. at 507-08.) Judge Seals' order further states,

> This Court finds the Applicant's testimony is not credible, while also finding trial counsel's testimony is credible. This Court further finds trial counsel adequately conferred with Applicant, conducted a proper investigation, and was thoroughly competent in his representation.
>
> . . .
>
> This Court finds the Applicant failed to meet his burden of proving trial counsel should have requested a cautionary jury charge because the Applicant was in restraints. This Court notes trial counsel did object to the Applicant wearing handcuffs during trial but the trial judge cited safety concerns when he declined to remove the restraints. (App. pp. 52-53.) The South Carolina Court of Appeals affirmed the trial judge's decision. See State v. Green, Op. No. 2008-UP-592 (S.C. Ct. App. filed October 17, 2008) (citing Deck v. Missouri, 544 U.S. 622, 125 S. Ct. 2007 (2005)). While the Applicant argues trial counsel should have requested a jury instruction on the issue, he points to no case law to support his argument that such a charge would have been required. In light of the overwhelming evidence against the Applicant, this Court finds he has failed to meet his burden of proving either that his jury instruction was mandated or that he was prejudiced by the lack of said instruction. See Geter v. State, 305 S.C. 365, 367, 409 S.E.2d 344, 346 (1991) (concluding reasonable probability of a different result does not exist when there is overwhelming evidence of guilt).

(R. at 508-11.)

In Deck v. Missouri, 544 U.S. 622 (2005), the Supreme Court stated that "the Constitution forbids the use of visible shackles during the penalty phase, as it forbids their

7

use during the guilt phase, *unless* that use is justified by an essential state interest-such as the interest in courtroom security-specific to the defendant on trial." Deck, 544 U.S. at 624 (internal quotation marks omitted) (citing Holbrook v. Flynn, 475 U.S. 560, 568-69 (1986); Illinois v. Allen, 397 U.S. 337, 343-44 (1970)). As the PCR court noted, Petitioner's counsel did object to Petitioner wearing handcuffs during trial but was overruled; the following appears in the transcript near the beginning of Petitioner's trial:

> THE COURT: Alright. Let the record reflect that, ah, Mr. Cain as attorney for the defendant has asked that certain restraints be removed from the defendant. I have consulted with security in that regard. This is outside the presence of the jury. They have deep concerns about security for this defendant based on his prior conduct in the Marlboro County jail. That conduct was so atrocious that they had to ship him somewhere else.
> I conclude that in the interest of security and following the folks who are charged with that, I decline to release him from security even in the courtroom, and I will give appropriate instructions to the jury that the fact that he's in handcuffs raises no adverse inference against him. He's simply being tried. He's presumed innocent.

(R. at 63-64.) Although the judge did not instruct the jury regarding Petitioner's handcuffs, and Petitioner's counsel did not ask for such an instruction at the conclusion of the trial, Petitioner's counsel did argue in his closing:

> Now, Mr. Green for whatever the reasons are has sat here before you for this is the third day. He is for security reasons I assume has handcuffs on, shackles, but that does not mean he has committed a crime, and I hope you will understand that and would not judge him as being guilty of the crimes for which he's accused.

(R. at 401.)

The undersigned recommends granting summary judgment to Respondent on Ground One because the state court's rejection of this claim is not contrary to, or an unreasonable application of, clearly established federal law, as determined by the Supreme Court, nor is the state court's decision based on an unreasonable determination of the facts. See 28 U.S.C. § 2254(d). The PCR court found, *inter alia*, that Petitioner "failed to meet his

burden of proving . . . that he was prejudiced by the lack of" the at-issue instruction. (See R. at 510.) Given the evidence against Petitioner, he is not entitled to federal habeas relief on Ground One.

Tyrone King testified at Petitioner's trial that on December 6, 2004, King called the decedent and asked the decedent to take King to his sister's basketball game. (R. at 117-18.) When the decedent arrived, King and Petitioner were at King's house. (R. at 118.) The decedent drove King and Petitioner to the basketball game and dropped them off, and when the basketball game was over, King called the decedent and asked the decedent to return and pick him up. (R. at 120-23.) King testified that the decedent drove King and Petitioner to the Projects, and King and Petitioner "start[ed] walking and sniffing on powder cocaine." (R. at 124.) According to King, when he and Petitioner got to DeShawn Moore's house, King called the decedent and asked the decedent to drop him off at East Project. (R. at 125.) King testified that after he hung up with the decedent, Petitioner stated, "I'm going to splish-splash that Nigger." (R. at 137.) King testified that "splish-splash" is "gang talk" for "cut, stab, kill." (R. at 136-37.)

King further testified that the decedent drove King and Petitioner "up to East," and when they arrived, King got out, but Petitioner remained in the vehicle. (R. at 126-27.) King stated that it took him about an hour to walk back to Reese Street, and that is when he saw Petitioner driving the decedent's car. (R. at 128-29.) King testified that he asked Petitioner "what he was doing with [the decedent's] car," and Petitioner "told [King] to chill." (R. at 128.) King testified that he got into the vehicle with Petitioner and rode to Jason Wilson's house; King testified that he heard Petitioner "say something about a knife" to Wilson. (R. at 128-30.) King testified that when they left, Petitioner drove the vehicle; King stated that he heard something moving in the trunk. (R. at 130-30.) King stated that he asked Petitioner to drop him off at Reese Street, and that Petitioner "turned and yelled out at [the decedent] when

9

he–he stated to the trunk, the back seat area and ask [the decedent] who he's talking to." (R. at 131.) King testified that he saw a knife across Petitioner's lap. (R. at 130.) According to King, Petitioner again stated that he was going to "splish-splash" the decedent. (R. at 138.)

King further testified that when Petitioner returned an hour and a half to two hours later, and King asked about the decedent, Petitioner "started laughing" and said "to chill out." (R. at 133.) King testified that when he asked Petitioner questions about the decedent, Petitioner told King that Petitioner beat the decedent and stabbed him. (R. at 157.) King testified at that point, he told Petitioner to take him back home. (R. at 157.) According to King, while they were en route back to South Carolina, police came up behind the vehicle; Petitioner "stopped, and he was like, 'Fuck that. I ain't going to jail for no murder.'" (R. at 158.) King also testified that Petitioner had called him from the decedent's phone. (R. at 133-34.)

In addition to King's testimony, Agent Thomason testified that a knife blade was removed from the decedent's body during the autopsy. (R. at 233-34.) Jason Wilson testified that on December 6, 2004, Petitioner and King drove to his house in a white Impala; Wilson testified that he believed King was driving the vehicle. (R. at 332-33.) Wilson testified that Petitioner said "he got a body in the trunk or whatever, somebody in the trunk." (R. at 334.) Wilson also testified that Petitioner "asked for a knife or something because after that he said something about wanting to steal the car. . ." (R. at 334.) Wilson testified that he gave Petitioner a knife. (R. at 334-35.)

Finally, Agent Hallman testified about a footwear impression on the victim's underwear. (R. at 270.) She testified that she had three pairs of shoes to compare to the footwear impression: the decedent's shoes, a pair of shoes from Tyrone King, and a pair of shoes from the Petitioner. (R. at 274.) Hallman testified that she did not "positively

10

identify" any of them, but concluded one was a "more probable candidate" than the others. (R. at 297-98.) She testified that her ultimate conclusion was that the "shoes that belonged to Kendall Green were consistent to both unknowns that I had which would be the footwear impression on the underwear and the cast." (R. at 299.) She testified that she "rule[d] . . . out" King's shoe. (R. at 300.)

Even assuming counsel's failure to request a jury instruction was deficient, there is–as the PCR court noted–overwhelming evidence of Petitioner's guilt.[3] The undersigned therefore recommends granting summary judgment to Respondent on Ground One. See Walker v. Martel, 709 F.3d 925, 943 (9th Cir. 2013) ("The California Supreme Court reasonably concluded that, even if Walker's counsel had objected to the restraint and even if the shackle had been removed for trial, it is not reasonably likely that the outcome would have been different."); Martin v. Sec'y, DOC, 347 F. App'x 485, 494 (11th Cir. 2009) (per curiam) (affirming denial of habeas relief where counsel failed to object or request a hearing on the use of a stun belt because prejudice had not been shown); Marquard v. Sec'y for the Dep't of Corr., 429 F.3d 1278, 1313 (11th Cir. 2005) ("Under the circumstances of this case-a brutal, premeditated murder, a unanimous jury recommendation of a death

---

[3] Petitioner asserts in his Response in Opposition that the evidence against him was not overwhelming. (See Dkt. No. 27 at 13-15 of 17.) Petitioner points to the unidentified male blood found on King's clothing as well as Hallman's testimony that she did not "positively identify" the print on the victim as coming from Petitioner's shoe. (See Dkt. No. 27 at 13-14 of 17.) Petitioner also asserts that Sherell Watson (King's mother) was coerced into lying under oath. (Dkt. No. 27 at 15 of 17.)

The undersigned disagrees with Petitioner's characterization of the evidence. It is unclear how the unidentified male blood on King's clothing sheds any light upon the identify of the individual who killed the victim, as Agent Ortuno did not testify the blood on King's clothing belonged to the victim. (See R. at 322-24.) Agent Ortuno did testify that the major contributor was not the victim, King, or the Petitioner, and that the "minor contributor in this mixture was so weak that [he] can't reliably interpret to anyone." (R. at 323.) Although Petitioner asserts Ms. Watson (King's mother) was lying under oath, he does not point to any specific testimony. Finally, Hallman did testify that she could not "positively identify" Petitioner's shoe because there was no "identifying characteristic," such as "a nail that's in the bottom of a shoe . . . or something that would be totally unique to that one specific shoe," that appeared both on the shoe and the print. (See R. at 297.) She did testify, however, that Petitioner's shoe was the "more probable candidate" than any of her other comparisons, and she did rule out both King's shoe and the victim's shoe as the shoe that made the print on the victim. (See R. at 295-300.)

11

sentence, and a sentencing judge's finding of four aggravating and no statutory mitigating evidence-we cannot say that the Florida Supreme Court's decision on the prejudice prong of Marquard's IAC-shackling claim is contrary to or involves an unreasonable application of federal law or involves an unreasonable determination of facts."); Rush v. Lempke, Civ. A. No. 09-CV-3464(JFB), 2011 WL 477807, at *13 (E.D.N.Y. Feb. 2, 2011).

**B.     Ground Two: Failure to Impeach Key Witness**

In Ground Two, Petitioner asserts counsel was ineffective by failing "to impeach the state's key witness (appellant's co-defendant) by producing his prior inconsistent statement, which would have shown that he was on stand lying under oath." (Dkt. No. 1.) Petitioner is referring to counsel's cross-examination of Tyrone King, whose testimony was outlined above. (See Dkt. No. 27 at 8 of 17.)

In assessing this claim, the PCR court noted Petitioner's testimony that "trial counsel failed to impeach the State's key witness, Tyrone King, when he lied during his testimony," as well as counsel's testimony that counsel "believed he adequately cross-examined Tyrone King and did not believe there were glaring inconsistencies in his testimony." (R. at 508.) The PCR court further stated,

> This Court finds the Applicant failed to meet his burden of proving trial counsel should have impeached Tyrone King's testimony. This Court has reviewed the record and finds trial counsel adequately cross-examined King. This Court finds the Applicant failed to articulate a basis upon which trial counsel should have impeached King and how such questioning would have changed the outcome of the case. This Court notes a different outcome in this case was especially unlikely given the strong evidence of the Applicant's guilt. See id.

(R. at 511.) The PCR court found that Petitioner failed to prove either prong of the Strickland test. (Id.)

The following exchange occurred at Petitioner's PCR hearing:

A. Well, I had asked them to impeach Tyrone testimony or whatever. He had lied under oath or whatever, saying that he was going to Charlotte or whatnot.

12

> But he changed his testimony on the stand and said he went to Salisbury. I asked Mr. Cain to correct that and impeach his testimony even though he was the star witness.
>
> Q. Okay. And that was a prior inconsistent statement that Mr. King was making?
>
> A. Yes, sir.
>
> Q. Okay. And you asked Mr. Cain to cross examine him with regard to that?
>
> A. Yes.
>
> Q. And did he cross examine him with regard to that?
>
> A. He cross examined him, but he did not impeach him as he tell me he would.

(R. at 466.) Petitioner raised the "Charlotte" versus "Salisbury" testimony in his pro se brief to the PCR court. (See R. at 440-41.)

The undersigned recommends granting summary judgment to Respondent on Ground Two. The only alleged inconsistency raised to the PCR court was Petitioner's contention that King's trial testimony that he and Petitioner were going to Salisbury was inconsistent with King's prior statement that he and Petitioner were going to Charlotte. (See R. at 446, 440-41.) Petitioner asserts in his Response that counsel was ineffective for "failing to produce Tyrone King's (state's star witness) prior inconsistent statement, as Petitioner had instructed him to do. . . ." (Dkt. No. 27 at 8 of 17.) Petitioner contends his counsel "kept asking the 'star witness' the same lame questions instead of producing the star witness' prior inconsistent statement before the jury, which would've destroyed his credibility." (Id.) Petitioner states,

> Being as though the State's star witness had previously stated in his prior inconsistent statement that he and Petitioner was going to "Charlotte" (See Exhibit No. 1, attached herewith) and then said "under oath" Salisbury (see app. 201, ll. 6-12), then it should have been easy for the PCR court to conclude that trial counsel was ineffective.

13

(Id. at 9 of 17.) Petitioner contends there are many "lies" in King's statements. (See Dkt. No. 27 at 9-12 of 17.)

Despite Petitioner's arguments, the PCR court's rejection of the claim in Ground Two does not meet the standard set forth in § 2254(d). Counsel did not impeach King with the prior statement that King and Petitioner were en route to Charlotte, but counsel did ask King about the "Charlotte" versus "Salisbury" testimony:

> Q. Do you remember saying in that statement when you all left that you were on the way to Charlotte?
>
> A. No. No. I don't remember saying that.

(R. at 212.) However, during the same line of questioning on cross-examination, King testified that he did not think they ever arrived in Charlotte "because [Petitioner] didn't know where we was at. [Petitioner] kept asking me where we was at but he was driving." (R. at 212.) When counsel asked if they "actually ever [went] to Salisbury," King stated, "I don't know if we was in Salisbury or not. I don't know. I ain't never been to Salisbury. I mean, if we was there, I wouldn't know if we was there." (R. at 212-13.)

While counsel did not impeach King as Petitioner might have liked, counsel did raise issues on cross-examination that questioned King's credibility as a witness; counsel highlighted that King sold drugs and had been sniffing cocaine all day long on December 6 of 2004. (See R. at 183, 178.) On cross-examination, King admitted that he drove the victim's vehicle on December 7, and counsel argued in summation that King was the "leading person here." (R. at 186-86, 404-05.) Counsel asked King about the charges he was facing related to the death of the victim; King acknowledged that he was facing the charge of accessory after the fact. (R. at 206.) In addition, counsel highlighted that at the time of trial, King was serving time for a strong arm robbery conviction. (R. at 211.) In his closing argument, counsel argued that King had a motive for the murder because King was

jealous of the attention the victim was giving to the Petitioner, and that King was "trying to shift everything towards" Petitioner. (R. at 406.) Counsel noted in closing that King "said he was in the drug dealing business" and that King was in prison for armed robbery. (R. at 403, 405.) Given that counsel's cross-examination of King did highlight numerous problems with King's credibility, the undersigned concludes Petitioner is not entitled to federal habeas relief on Ground Two. See Stephens v. Hall, 294 F.3d 210, 225-26 (1st Cir. 2002); see also Martin v. Warden, Civ. A. No. 7:07cv00067, 2007 WL 1655156, at *2-4 (W.D. Va. June 5, 2007).

**C.     Motion to Amend (Dkt. No. 18)**

In his Motion to Amend, Petitioner seeks to supplement his habeas petition with the following ground for relief:

> [T]he trial court did not pursue less restrictive alternatives before compelling [Petitioner] to wear restraints before the jury. Less restrictive alternatives [are] mandated pursuant to Holbrook v. Flynn and other relevant precedents.

(Dkt. No. 21 at 1 of 2.)[4] Respondent opposes amendment. (Dkt. No. 24.)

The undersigned recommends denying Petitioner's Motion to Amend (Dkt. No. 18). Petitioner did not raise the proposed additional ground on direct review, and this allegation of trial court error could not have been properly raised in his post-conviction relief proceeding. See Drayton v. Evatt, 312 S.C. 4, 9, 430 S.E.2d 517, 520 (1993) ("Issues that could have been raised at trial or on direct appeal cannot be asserted in an application for post-conviction relief absent a claim of ineffective assistance of counsel."); Simmons v. State, 264 S.C. 417, 420-23, 215 S.E.2d 883-86 (1975) (concluding the following two issues

---

[4]Petitioner further contends in his Response in Opposition that the "trial judge committed reversible error by compelling Petitioner to wear physical restraints off of the security's word only. Petitioner was never afforded an opportunity to refute their allegations, which is mandatory." (Dkt. No. 27 at 5 of 17.) To the extent Petitioner seeks to raise such a claim in the instant petition, it is barred for the same reason the claim raised in the Motion to Amend is barred.

15

were direct appeal issues, and therefore not properly raised in the post-conviction relief proceeding: "Whether the Trial Judge's rebuke of trial counsel constituted prejudicial error?" and "Whether it was prejudicial error for the Trial Judge to permit comment by the solicitor on Appellant's failure to call his wife as a witness when she was unavailable?"). Although Petitioner contended on direct appeal that the trial court erred by "refusing to remove the handcuffs and other restraints from appellant during his jury trial," nowhere did Petitioner argue the claim he attempts to raise now: that the trial court erred by failing to pursue less restrictive alternatives before compelling Petitioner to wear restraints before the jury. (See Dkt. No. 15-5 at 4 of 12.) Similarly, although Petitioner contended in his PCR proceedings that counsel was ineffective for failing to request a cautionary instruction regarding the shackles, Petitioner did not raise any claim that counsel was ineffective for failing to pursue less restrictive alternatives. Accordingly, the claim or claims Petitioner seeks to add to his habeas petition are barred. See Breard v. Greene, 523 U.S. 371, 375-76 (1988); see also Smith v. Murray, 477 U.S. 527, 533 (1986); Ward v. McLeod, No. 3:01-0012-25BC, 2002 WL 31996018, at *4 (D.S.C. Apr. 18, 2002) ("When the petition for habeas relief is filed in the federal court, a petitioner may present only those issues which were presented to the South Carolina Supreme Court through direct appeal or through an appeal from the denial of the PCR application, whether or not the Supreme Court actually reached the merits of the claim.").[5]

---

[5] Procedural default may be excused if the Petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice." Coleman v. Thompson, 501 U.S. 722, 750 (1991); see also Martinez v. Ryan, 132 S. Ct. 1309, 1315 (2012). In the alternative for showing cause and prejudice, a petitioner may attempt to demonstrate a miscarriage of justice, e.g., actual innocence, Bousley v. United States, 523 U.S. 614, 623 (1998); see also Schlup v. Delo, 513 U.S. 298, 327 (1995), or abandonment by counsel. Maples v. Thomas, 132 S. Ct. 912, 924 (2012) (inquiring "whether [the petitioner] ha[d] shown that his attorneys of record abandoned him, thereby supplying the extraordinary circumstances beyond his control, necessary to lift the state procedural bar to his federal petition" (internal quotation marks and citations omitted)). Petitioner has not made any showing sufficient to overcome the procedural bar.

16

Because Petitioner's proposed claim is defaulted, the undersigned recommends denying Petitioner's Motion to Amend (Dkt. No. 18).

## CONCLUSION

It is therefore RECOMMENDED, for the foregoing reasons, that Petitioner's Motion to Amend (Dkt. No. 18) be DENIED. It is further RECOMMENDED that Respondent's Motion for Summary Judgment (Dkt. No. 14) be GRANTED; and the Petitioner's habeas petition be DISMISSED WITH PREJUDICE. It is also RECOMMENDED that a certificate of appealability be denied.[6]

IT IS SO RECOMMENDED.

_____
WALLACE W. DIXON
UNITED STATES MAGISTRATE JUDGE

July 25, 2014
Charleston, South Carolina

**The parties' attention is directed to the important notice on the next page.**

---

[6] A certificate of appealability "may issue . . . only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). A prisoner satisfies this standard by demonstrating that reasonable jurists would find the district court's assessment of his constitutional claims is debatable or wrong and that any dispositive procedural ruling by the district court is likewise debatable. See Miller-El v. Cockrell, 537 U.S. 322, 327 (2003); Slack v. McDaniel, 529 U.S. 473, 484 (2000); Rose v. Lee, 252 F.3d 676, 683-85 (4th Cir. 2001). In this case, the undersigned recommends concluding that the standard for the issuance of a certificate of appealability has not been met.

17

**Notice of Right to File Objections to Report and Recommendation**

The parties are advised that they may file specific written objections to this Report and Recommendation with the District Judge. **Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections.** "[I]n the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must 'only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation.'" *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005) (quoting Fed. R. Civ. P. 72 advisory committee's note).

Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *see* Fed. R. Civ. P. 6(a), (d). Filing by mail pursuant to Federal Rule of Civil Procedure 5 may be accomplished by mailing objections to:

> **Robin L. Blume, Clerk**
> **United States District Court**
> **Post Office Box 835**
> **Charleston, South Carolina 29402**

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.** 28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984).